IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROWAN L., et al.,

        *Plaintiffs,*

  v.

RADNOR TOWNSHIP SCHOOL DISTRICT,

        *Defendant.*

CIVIL ACTION
NO. 21-1319

**PAPPERT, J.**                                                                               **October 27, 2021**

## MEMORANDUM

Rowan L. is a former Radnor High School student with disabilities, which include inattention and executive dysfunction. His parents sought compensatory education for the Radnor Township School District's alleged failure to provide Rowan an appropriate educational program over the course of more than two years. The state administrative hearing officer agreed that Radnor violated federal law but issued a compensatory award Rowan's parents believe to be far too small. They appealed that decision by suing Radnor in federal court. Rowan's parents and Radnor moved to supplement the administrative record. For the following reasons, the Court denies both Motions, with the exception of that part of Radnor's Motion not opposed by the parents.

I

Rowan L. is now a nineteen-year-old college student who attended Radnor High School from 2016 to 2020. (Hr'g Off. Dec. ¶ 3, ECF 14-1; Stip's ¶¶ 1, 23, Admin. Rec.

1

Ex. 6.)[1]  Rowan has been diagnosed with disorders of attention deficit hyperactivity ("ADHD") and written expression.  (Hr'g Off. Dec. ¶ 5.)  As a high school student, he suffered from deficits in executive functioning that affected his educational progress in several ways, including the ability to self-advocate, self-monitor, solve problems, plan long-term, initiate and complete tasks, and process and remember information.  (Compl. ¶ 2, ECF 1.)  Radnor conducted a psychoeducational evaluation of Rowan and concluded he was eligible for special education.  (Stip's ¶ 4.)

In February of 2020, after Radnor determined Rowan was no longer eligible for special education and proposed removing him from it, his parents filed a due process complaint.  (Hr'g Off. Dec. ¶¶ 70–71, 75–77.)[2]  They alleged Radnor violated the Individuals with Disabilities Act ("IDEA") by denying Rowan a free appropriate public education ("FAPE") between February of his sophomore year and his June 2020 graduation.  (Hr'g Off. Dec. 1; Stip's ¶ 23.)[3]  They claimed the individualized educational programs ("IEP") Radnor provided were "sorely inadequate" because they consisted of generic accommodations not tailored to Rowan's educational needs and requested compensatory education as a remedy.  (Resp. to Radnor's Mot. to Supp. 2–3; Hr'g Off. Dec. 1.)[4]

---

[1] Rowan's parents stipulated to the paginated version of the hearing officer's decision attached to Radnor's Motion.  (Resp. to Radnor's Mot. to Supp. 1, ECF 15.)

[2] The parents agreed to withdraw the complaint without prejudice provided its February 2020 filing date would control for statute of limitations purposes were it reinstated.  (Stip's ¶ 19.)  They then reinstated the complaint in May of 2020.  (*Id.* at ¶ 22.)

[3] The page numbers in this Memorandum correspond to the ECF pagination unless that is unavailable for a particular document.

[4] The IDEA conditions federal funds for educating disabled students on states providing a FAPE to those eligible.  *See* 20 U.S.C. § 1412(a)(1).  A FAPE encompasses special education provided pursuant to an IEP, a detailed written plan including, among other provisions, descriptions of the student's

The hearing officer concluded Radnor failed to provide Rowan an IEP with special education. *See* (Hr'g Off. Dec. 34–38). He awarded fifteen hours of compensatory education in the form of "direct instruction of executive functioning skills"—a "specific and limited" remedy commensurate with Radnor's IDEA violation. (*Id.* at 3, 42.) The parents believe that although the hearing officer rightly concluded Radnor did not offer Rowan an IEP "reasonably calculated" to provide a FAPE, the award of fifteen hours of compensatory education was "shockingly inadequate." (Parents' Mot. to Supp. 2, ECF 13.) They seek a remedy proportional to the two-plus years of "educational deprivation" that "pervaded" Rowan's school days. (Compl. ¶ 7.)

The parties wish now to supplement the administrative record, which includes multiple exhibits submitted by both sides and four days of hearing transcripts. (ECF 4.) Rowan's parents seek to add to the record a report compiled by psychologist Holly Cohen, while Radnor wants to introduce an October 2019 reevaluation report on Rowan and an affidavit from Radnor's special education director. (Mots. to Supp., ECF 13, 14.) The parents stipulated to the admission of the reevaluation report. (Resp. to Radnor's Mot. to Supp. 1.)

II

In an IDEA appeal of a state hearing officer's decision, federal district courts "shall hear additional evidence" at a party's request. 20 U.S.C. § 1415(i)(2)(C)(ii). The court cannot "summarily" exclude this additional evidence; rather, it is to

---

academic achievement and functional performance levels, measurable annual goals and special education to be provided. §§ 1401(9), 1414(d)(1)(A)(i). A disabled student's IEP is the "centerpiece of the [IDEA's] education delivery system" for that student. *Endrew F.* ex rel. *Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). Special education, in turn, is instruction "specially" designed for a disabled student's "unique needs." § 1401(29).

discretionarily decide whether to hear it. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758, 760 (3d Cir. 1995). This discretion must be "particularized" so the court will hear evidence that is "relevant, non-cumulative and useful" to determining whether the disabled student's educational program comports with the IDEA. *Id.* at 760; *see also Antoine M. v. Chester Upland Sch. Dist.*, 420 F. Supp. 2d 396, 405 (E.D. Pa. 2006) (noting the likelihood the court would find proffered testimony "helpful in illuminating the nature of the controversy"); *cf. G.A.* ex rel. *L.A. v. River Vale Bd. of Educ.*, No. 11-3801, 2013 WL 5305230, at *6 (D.N.J. Sept. 18, 2013) (counseling district courts to not allow additional evidence to "change the character of the hearing from one of review to a trial *de novo*") (internal quotation marks omitted) (emphasis in original) (quoting *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994))).

Accordingly, the court's analysis of whether to hear additional evidence "should be tailored to the specific facts and claims" before it. *J.L. v. Lower Merion Sch. Dist.*, No. 20-1416, 2021 WL 4262321, at *3 (E.D. Pa. Sept. 17, 2021); *Antoine M.*, 420 F. Supp. 2d at 402 (explaining that courts are to engage in an individualized analysis accounting for each case's context). One important consideration in an appropriate case is the possibility of cross examination. *See J.L.*, 2021 WL 4262321, at *5 (citing *A.H.* ex rel. *K.P. v. Colonial Sch. Dist.*, 779 F. App'x 90, 93 (3d Cir. 2019)).

There is no "threshold requirement" that a party justify not presenting additional evidence at the due process hearing before a court can decide to hear it. *M.C.* ex rel. *Conyers v. Sch. Dist. of Phila.*, 393 F. Supp. 3d 412, 416–17 (E.D. Pa. 2019) (citing *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253 (3d Cir. 2012)). The evidence can

come in even if the party has or could have testified at the hearing. *See id.* at 416.[5] But courts cannot render the hearing a "formality" by giving a party "carte blanche" to present evidence it failed to offer there. *Antoine M.*, 420 F. Supp. 2d at 402. Nor should they "turn a blind eye" to the possibility of a party "strategic[ally] manipulat[ing]" the judicial review process. *M.C.*, 393 F. Supp. 3d at 418; *see id.* at 403 (instructing courts to ensure parties do not try to "leapfrog" the hearing (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 998 (1st Cir. 1990)).

District courts must grant "due weight" to the hearing officer's factual findings. *See Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). This means the officer's factual findings are "considered prima facie correct," and the officer's credibility determinations for live witness testimony are owed "special weight" and must be accepted "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." *Id.* (emphasis in original) (quoting *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) in first quotation and *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527–29 (3d Cir. 1995) in third quotation). But a district court that decides to hear additional evidence can "accept or reject the agency findings depending on whether those findings are supported by the new, expanded record" and whether they jibe with the IDEA's requirements. *S.H.*, 336 F.3d at 270 (quoting *Oberti v. Bd. of Educ. of Clementon Sch. Dist.*, 995 F.2d 1024, 1220 (3d Cir. 1993)).

---

[5] Our Court previously explained that courts are to decide whether the introducing party has sufficiently justified its failure to present evidence at the hearing and listed four factors they could consider. *Antoine M.*, 420 F. Supp. 2d at 403. Radnor relies on this four-factor test. (Radnor's Mot. to Supp. 4–6.) Because more recent Third Circuit case law does not impose the threshold-justification requirement, neither will the Court in this case. *See D.K.*, 696 F.3d at 253–54 (omitting any such requirement from its analysis).

The reasonableness of the IEP a school district provides a disabled student is to be determined "as of the time it is" provided. *See Susan N.*, 70 F.3d at 761–62 (quoting *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993)). In making this determination, courts can admit evidence not available to the school district. *See id.* at 762. Yet they must examine such evidence "carefully" and cannot use it to "Monday Morning Quarterback[]" the district's decisions. *See id.* (quoting *Fuhrmann*, 993 F.2d at 1040); *G.A.* ex rel. *L.A.*, 2013 WL 5305230, at *6 (explaining that limiting "after-acquired evidence" serves the "due weight" standard for the hearing officer's findings).

### III

### A

#### 1

Rowan's parents seek to supplement the administrative record with a report prepared by Cohen, a school psychologist, that proposes a much larger amount of compensatory education than the hearing officer awarded. (Cohen Rep. 15–16, ECF 13 Ex. A.) The report incorporates an interview with Rowan, input from his parents and private psychologist and summaries of select documents as well as the hearing officer's decision. (*Id.* at Ex. A 1–15.) The parents argue Cohen's report is both relevant and useful in that its recommendation of 144 hours of compensatory education would assist the Court in determining the adequacy of the fifteen hours the hearing officer awarded, and it is not cumulative of other record evidence. *See* (Parents' Mot. to Supp. 2, 6). They also claim they could not have presented Cohen's report at the due process hearing because she issued it several months after it took place. (*Id.* at 6.) Radnor opposes the report's admission on the grounds that it lacks a foundation and that, in

any event, it is useless, irrelevant and cumulative. (Resp. to Parents' Mot. to Supp. 3–13.) With respect to Cohen's 144-hour recommendation, Radnor argues it is untethered to the two-plus-year period between Rowan's tenth-grade year and graduation at issue in this case and unsupported because Cohen apparently did not review Rowan's IEPs. *See* (*id.* at 11–13).

Rowan's parents resolved Radnor's foundation objection by appending to Cohen's report a signature page and copy of her rèsumè.[6] Radnor can no longer claim the parents have failed to provide information about Cohen's education or background, and that it cannot determine the basis of her qualifications for recommending a compensatory education award. (*Id.* at 4.) Whether the report's content warrants its admission is a more difficult question requiring a "tailored" analysis of each of its six sections. *J.L.*, 2021 WL 4262321, at *3; (Cohen Rep.). Still, the Court will exclude the report from the administrative record.

## 2

### i

The first section of Cohen's report covers "Parent input." (Cohen Rep. 1–6.) That information, however, is second-hand—filtered through Cohen, who appears to summarize an interview with Rowan's mother. *See* (*id.*). That summary inevitably excludes portions of the interview, and there is no telling whether her doing so produced an accurate portrayal of Rowan's mother's statements. The parent input

---

[6] After Radnor highlighted the omission of this information in its response to the parents' Motion, they moved for leave to file a sur-reply to add it to the report and apologized for "inadvertent clerical oversights." *See* (*id.* at 4; ECF 18, 18-2, 18-3). The Court grants that Motion.

section is unreliable and not useful to the Court's analysis. *See Susan N.*, 70 F.3d at 760.

The section suffers from other flaws as well. Much of it is not relevant to what the parents themselves describe as the "central substantive issue" in this case: the adequacy of the hearing officer's award of fifteen hours of compensatory education for Rowan. *See id.*; (Parents' Mot. to Supp. 2). It is also cumulative to the extent it generalizes information about his time in high school that was described with more nuance in Rowan's mother's testimony at the due process hearing. *See generally* (Admin. Rec. Ex. 10; Cohen Rep. 1–6). Moreover, the record includes detailed testimony from another of Rowan's private psychologists, Frances Sutherland. (ECF 4 Ex. 8.)

At least some of the information in the parent input section, however, arguably merits admission because it is likely to be "helpful in illuminating the nature of the controversy": an update on Rowan's college experience. *See* (Cohen Rep. 1–6); *Antoine M.*, 420 F. Supp. 2d at 405. That this information concerns developments postdating Rowan's high school graduation and the due process hearing is not grounds for automatic exclusion. Radnor's argument to this effect ignores Third Circuit case law allowing the Court to consider such evidence, provided it is not used to "Monday Morning Quarterback" Radnor's decisions about Rowan's education. *See* (Resp. to Parents' Mot. to Supp. 7–8); *Susan N.*, 70 F.3d at 761–62; *see also A.H.*, 779 F. App'x at 93–94 (affirming the exclusion as additional evidence of a psychologist's evaluation of a student performed after a parent brought suit in federal court but crediting the district

court's acknowledgement of the evaluation's relevance notwithstanding the time at which it was conducted).

Evidence about a student's circumstances after the period during which the alleged FAPE deprivation occurred can be helpful to calculating the "equitable" award of compensatory education. *See Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 718 (3d Cir. 2010) (explaining that courts crafting equitable relief pursuant to the IDEA must "consider all relevant factors" (quoting *Florence Cnty. Sch. Dist. v. Carter*, 510 U.S. 7, 16 (1993)). The evidence is useful if it sheds light on the amount of compensatory education required to place the student in the position he or she would have been in but for the deprivation. *See id.* at 717–18 (explaining that "compensatory education serves to 'replace[] educational services the child should have received in the first place'" (quoting *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)); *Jana K.* ex rel. *Tim K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 608 (M.D. Pa. 2014) (citing *Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990) and *Ferren C.*, 612 F.3d at 717). In fact, the hearing officer noted the absence of such evidence from the record when analyzing Rowan's award. *See* (Hr'g Off. Dec. 42). Adding it could help the Court perform that same analysis.

Rather than a private psychologist's account, however, direct testimony from Rowan's mother would be more appropriate and instructive. Her hearing testimony does not preclude additional testimony in this case, and the Court will allow Radnor to depose her. (Resp. to Parents' Mot. to Supp. 14); *see M.C.*, 393 F. Supp. 3d at 416; *e.g.*, *J.L.*, 2021 WL 4262321, at \*5 (describing the importance of the student's testimony being subject to cross examination); *Antoine M.*, 420 F. Supp. 2d at 405 n.11

(authorizing testimony from the school district to rebut the plaintiffs' proffered additional testimony).

The next section of Cohen's report is titled "Interview with Rowan." (Cohen Rep. 6.) This section is unreliable and not useful for the same reason as the parent input section: it is an interview summary drafted and conveyed by Cohen that leaves open the possibility of selective presentation of the interview subject's statements. *See Susan N.*, 70 F.3d at 760. Yet it does not follow that the underlying information in this section— that is, Rowan's input—should not be added to the administrative record. Indeed, testimony from Rowan about his educational needs and goals would be useful, relevant, not cumulative of the evidence already in the record and may assist the Court in determining the proper amount and type of compensatory education for him. *See Ferren C.*, 612 F.3d at 718. For example, the report states Rowan admitted supports would benefit him in college but that he is reticent to ask for them because he thinks they provide a "free pass." (Cohen Rep. 6.)

Rowan's parents do not contend their son is unable or unwilling to testify at a deposition or trial, and his testimony would be admissible even if he could have testified at the due process hearing. *See M.C.*, 393 F. Supp. 3d at 416. Here, too, Radnor can depose Rowan in the event he may testify at trial.

ii

The next section of Cohen's report relays Sutherland's input. Sutherland testified at the due process hearing and was the only witness who the hearing officer found not credible. (Hr'g Off. Dec. 24.) In particular, the officer could not "give weight to opinions that are formed from outdated information and assumptions." (*Id.*) This

10

credibility determination is entitled "special" weight and cannot be reversed unless non-testimonial, extrinsic evidence justifies it. *See Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199. No such evidence does so, and Sutherland's input is not useful. *See Susan N.*, 70 F.3d at 760. Admitting this section would risk rendering the due process hearing a "formality." *See Antoine M.*, 420 F. Supp. 2d at 402. Moreover, the section is presented in the same unreliable manner as the parent input and Rowan interview sections, and it is cumulative of Sutherland's hearing testimony. *See generally* (Cohen Rep. 7–8; Hr'g Tr. VIII, Admin. Rec. Ex. 8).

Next are the "Record review" and "Hearing Officer summary" sections. (Cohen Rep. 8–15.) The record review section is useless because it consists of verbatim copies or summaries of documents already in the record: an October 2019 reevaluation report on Rowan, a January 2020 reevaluation report and Sutherland's rationale for the effectiveness of one-on-one meetings between Rowan and teachers. *See Susan N.*, 70 F.3d at 760; (ECF 4-20 at 48; ECF 4-22 at 13–40; ECF 4-11 at 19–61). The hearing officer summary section is useless for essentially the same reason. Cohen copy-and-pasted from the "FAPE Violations" and "Compensatory Education" parts of the hearing officer's decision. *See* (Cohen Rep. 13–15; Hr'g Off. Dec. 35–38, 41–42).

Finally, Cohen's report offers a recommendation for the amount of Rowan's compensatory education. (Cohen Rep. 15–16.) Cohen's recommendation of 144 hours is derived from counting one hour for the thirty-six weeks in an academic year and then multiplying thirty-six by four for Rowan's four years of high school. (*Id.* at 15.) This recommendation is irrelevant because it is tied to the school calendar rather than the two-plus-year period during which Rowan's parents allege Radnor failed to provide him

a FAPE, and it is the output of a formula applied without explanation or justification. *See Susan N.*, 70 F.3d at 760; (Hr'g Off. Dec. 34–38). The recommendation is also useless because there is no indication Cohen personally reviewed Rowan's IEPs for the period at issue. These were the "centerpiece" of the education Radnor provided, but Cohen apparently did not analyze them prior to making her recommendation. *Endrew F.*, 137 S. Ct. at 994. They were not part of the report's record review section, for instance. (Cohen Rep. 8–15.)

B

In addition to the October 2019 reevaluation report that Rowan's parents have agreed to add to the record, Radnor seeks to supplement the record with an August 2021 affidavit from Radnor's special education director, Jenny LeSage, with an attached course catalogue page describing courses whose nature the parties dispute. (ECF 14 Ex. B.) The affidavit states students are placed into "Skill Development" courses, such as Academic Success Center ("ASC"), based on the goals in their IEPs. (*Id.* at ¶¶ 4–5.) It asserts ASC and two other skill development courses are general electives taught by special education teachers who provide specially designed instruction to students with IEPs, including on executive functioning in ASC. (*Id.* at ¶¶ 7–9.) Attached to the affidavit is a page from Radnor High School's 2018-19 course catalogue describing these courses. (*Id.* Ex. 1.)

Radnor argues the affidavit should be added to the administrative record because the hearing officer allegedly overlooked testimony that ASC was taught by a special education teacher. *See* (Radnor's Mot. to Supp. 3). This allegedly led the hearing officer to incorrectly characterize ASC and another skill development course as

12

general, not special, education. *See* (*id.* at 2–3). Radnor claims the affidavit will offer a "correct description" of these courses. (*Id.* at 3.) Rowan's parents counter that LeSage could have already testified given she was listed as a possible witness and present for two days of the hearing. (Resp. to Radnor's Mot. to Supp. 1–2.) They believe the affidavit and course catalogue attachment are useless, duplicative, irrelevant and misleading. (*Id.* at 2.)

The affidavit and its attachment are cumulative because there is already ample record evidence of Radnor's skill development courses. *Susan N.*, 70 F.3d at 760. For one, the parents acknowledge Radnor "accurately" states in its answer that record evidence showed special education teachers taught ASC. (Resp. to Radnor's Mot. to Supp. 6 (citing Ans. ¶ 21, ECF 6).) The record is replete with references to these courses. *See, e.g.*, (ECF 4-11 at 182). Multiple witnesses also testified about them at the due process hearing. *See, e.g.*, (Hr'g Tr. VII 7–8). One of the witnesses, a special education teacher who herself has taught ASC and served as Rowan's case manager, stated ASC is "facilitated" by a special education teacher. (*Id.* at 8.) The hearing officer had this evidence before him when he issued his decision, which included the finding that ASC and another skill development course are "elective general education class[es] available to all students in [Radnor High School] regardless of disability." (ECF 14-1 ¶ 32.) The Court must give this factual finding "due weight" and treat it as "prima facie correct." *See Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199. Admitting the affidavit and its attachment would pay it no heed and risk transforming this appeal into a trial de novo. *See G.A.*, 2013 WL 5305230, at \*6.

Radnor's effort to include the affidavit and its attachment fails for two other reasons: it mischaracterizes the record and requests something the IDEA does not authorize. On the first point, Radnor claims the "instructor or type of instruction" provided in ASC and other skill development courses were "not at issue" during the due process hearing. (Radnor's Mot. to Supp. 5.) To the contrary, the core dispute in this case is whether Radnor provided Rowan a FAPE through IEPs with special education; Radnor claims these courses constitute special education, the parents argue they do not. *See* (Hr'g Off. Dec. 2–3; Compl. ¶¶ 21–23; C'ntercl. ¶¶ 27–28, ECF 6). As for the latter point, the IDEA provides that courts are to hear "additional" evidence at a party's request—not that they should entertain evidence a party claims will correct the record. *See* 20 U.S.C. § 1415(i)(2)(C)(ii); (Radnor's Mot. to Supp. 3, 5). Radnor's argument reveals that LeSage's affidavit is not so much "additional" evidence as it is "clarification" evidence. (Radnor's Mot. to Supp. 5.)

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.